**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA COLEMAN,** | ) | |
| | ) | **CASE NO. 3:10cv0464** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE JACK ZOUHARY** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **Commissioner of Social Security** | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Defendant.** | ) | |

Plaintiff, Barbara Coleman ("Coleman"), challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Coleman's

claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  The Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g).  The case is before this Court pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Court recommends that the final decision of the

Commissioner be vacated and remanded for further proceedings consistent with this Report and

1

Recommendation.

## I.  Procedural History

On June 28, 2005, Coleman filed an application for POD, DIB, and SSI alleging a disability onset date of December 31, 2004, and claiming that she was disabled due to depression and back pain.  (Tr. 302-308.)  Her application was denied both initially and upon reconsideration.  Coleman timely requested an administrative hearing.

On May 22, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Coleman, represented by counsel, testified.  Joseph L. Thompson, a vocational expert ("VE"), also testified.  On June 10, 2008, the ALJ found Coleman was able to perform past relevant work as an assembler, cashier, and parking lot attendant and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age thirty-seven at the time of her administrative hearing, Coleman is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563; 416.963.  (Tr. 303.) Coleman is a high school graduate (Tr. 71) and has past relevant work as an assembler, cashier, nurse's aide, parking lot attendant, and security guard.  (Tr. 67.)

### *Hearing Testimony*

2

At the hearing, Coleman testified to the following:

- She is unable to perform work-related activities due to pain in her back, left knee, neck, both shoulders and legs, as well as depression and anxieties.  (Tr. 344-345.)

- She lives with her teenage son.  (Tr. 353.)

- Sometimes she sleeps all day.  (Tr. 354.)  Other days she gets up for awhile and tries to do light things around the house, but back pain prevents her from doing too much.  *Id.*  Also, her medications make her drowsy.  *Id.*

- She has a slipped disc in her back and is prescribed Vicodin, Somas and ibuprofen.  (Tr. 354-355.)

- She attended a community college, but dropped out because she failed to complete any of the classes.  (Tr. 355-356.)

The ALJ posed the following hypothetical to the VE:

Let me ask you to assume that we are talking about a person who is 37 years old, high school education, has the work history that Ms. Coleman has.  And first let me ask you to assume that this person would have no exertional, postural, or environmental limitations.  And let's assume this person could understand and remember simple instructions, could concentrate on simple tasks for two-hour periods over an eight-hour day.  Let's assume this person could adequately interact with co-workers and supervisors.  And let's assume this person could adapt to changes in the work setting.  With those abilities and limitations, first of all, could such a person perform Ms. Coleman's past work?

(Tr. 358.)

The VE testified that such an individual could perform Coleman's past relevant work as an assembler, cashier, and parking lot attendant.  (Tr. 359.)  The ALJ next asked the VE to assume the individual:

. . . could stand or walk 25 to 30 minutes, could sit for 45 minutes at one time. That is stand or walk 25, 30 minutes at one time, sit 45 minutes at one time.  And let's assume that this person would require unscheduled breaks over an eight-hour period that could total two hours.  And let's assume this person would have the same mental abilities as in the last questions.  Let's assume this person would likely be absent from work three times a month.  With those abilities and limitations, could such a person perform Ms. Coleman's past work?

3

*Id.* The VE testified that there would be no jobs available for such a person. *Id.*

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 & 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Coleman was insured on her alleged disability onset date, December 31, 2004, and remained insured through June 30, 2007.  (Tr. 20, 22.)  Therefore, in order to be entitled to POD and DIB, Coleman must establish a continuous twelve month period of disability commencing between December 31, 2004, and June 30, 2007.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988);

---

[1]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

4

*Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Coleman established medically determinable, severe impairments, due to depression and anxiety; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  At Step 4, the ALJ using VE testimony, found Coleman capable of performing her past work activities as an assembler, cashier, and parking lot attendant.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## VI.  Analysis

Coleman claims the ALJ erred by: (1) improperly evaluating the opinions of the non-examining state-agency psychologists; (2) failing to address whether Coleman has borderline intellectual functioning; and (3) failing to consider Coleman's obesity.

### Opinions of the Non-Examining State-Agency Psychologists

Coleman contends that the ALJ erred in his assessment of the state agency reviewing psychologists, Carl Tishler, Ph.D., and Alice Chambly, Psy.D.  (Doc. No. 13 at 6-11.)  Furthermore, Coleman argues that the ALJ's step four finding, that Coleman could do past relevant work, not only conflicted with the state agency physicians' RFC, but also violated regulations, as set out in SSR 82–62.  (Doc. No. 13 at 10.)  The Commissioner responds that the ALJ properly assessed the opinions of the state reviewing psychologists.  The Commissioner, however, does not address whether the ALJ did the fact-finding required by SSR 82-62.  (Doc. No. 16 at 7-10.)

6

When evaluating medical opinions, the Agency will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 404.1527(d)(1).  The Agency will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) ...." *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(2).  Moreover, evidence from non-examining sources is also considered opinion evidence.  20 C.F.R. § 404.1527(f).  The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us."  20 C.F.R. § 404.1527(f)(2)(ii).

Pursuant to SSR 96-6p[2], the ALJ is required to consider the opinions of state agency physicians, stating in pertinent part:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists.  Administrative law judges and the Appeals

---

[2]    SSR 96-6p is titled: Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence. 1996 WL 374180.

Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

SSR 96-6p, 1996 WL 374180, *2 (Jul. 2, 1996).

After a psychiatric evaluation by Maria Kostrzewski, M.D., of Unison Behavioral Health Group on August 29, 2005, Coleman was diagnosed with generalized anxiety disorder, panic disorder with agoraphobia, and major depressive disorder, moderate.  (Tr. 172-173.)  Dr. Kostrzewski noted that Coleman's intelligence was average,[3] but her concentration was very poor.  (Tr. 173.)  Dr. Kostrzewski, however, did not perform a mental RFC assessment. Furthermore, there is nothing in the record reflecting Coleman sought any other psychiatric assistance.  The only mental RFC assessments are the ones submitted by the state agency non-examining physicians.

Dr. Tishler, a state agency non-examining physician, assessed Coleman with "generalized anxiety disorder panic disorder with agoraphobia; major depressive disorder, moderate."  (Tr. 161-164.)  In addition, he noted as follows:

Clmt dressed well for her appt and wore makeup and a wig.  She was pleasant and cooperative.  Her mood was anxious.  She gave short answers and appeared restless.  No hallucinations, SI, or HI.  Thoughts were organized and goal directed.  Memory was intact.  She was oriented x3.  Average intelligence. Insight and judgment are good.

* * *

ADLs: clmt cares for her son.  She helps with his homework and does household chores.  She spends time watching TV.  She goes to visit her family and they help her with her son.

---

[3]     Dr. Kostrzewski noted that Coleman finished high school and went to college for one year, receiving a certificate as a nurse's aide.  (Tr. 172.)

8

> Clmt's statements are credible and consistent with medical evidence.  Clmt appears able to handle work that does not involve a lot of contact with others, and would probably do best without strict production demands.

(Tr. 163.)   In June 2006, Dr. Chambly affirmed Dr. Tishler's findings.  (Tr. 301.)

The ALJ gave "evidentiary weight" to the state agency physicians' opinions.  (Tr. 26.) The ALJ noted that there were no other medical opinions in the record supporting the level of impairment Coleman claimed.  *Id.*  Based on this assessment, the ALJ calculated Coleman's RFC as follows:

> [T]he claimant has the residual functional capacity to understand and remember simple instructions; concentrate on simple tasks for 2-hour periods over an 8-hour day; interact appropriately with coworkers and supervisors; and adapt to changes in work setting.  She has no exertional, postural, or environmental limitations.

(Tr. 24.)

It is first argued that the ALJ ignored a portion of Dr. Tishler's assessment, which assigned Coleman greater limitations.  (Doc. No. 13 at 8.)  Specifically, Coleman asserts that the ALJ ignored two statements: "Claimant appears able to handle work that does not involve a lot of contact with others, and would probably do best without strict production demands."  *Id.*  As to these statements, the Commissioner argues that they are not definitive and do not indicate a strong position.  (Doc. No. 16 at 9.)  Moreover, the Commissioner contends that because Dr. Tishler did not have access to portions of the record containing statements that Coleman got along well with others and was cooperative with her treaters and examiners, the ALJ reasonably determined that the stricter limitations were not supported by the evidence.  *Id.*  Nevertheless, the Commissioner asserts that the ALJ reasonably afforded evidentiary weight to Dr. Tishler's opinion in calculating Coleman's RFC.  (Doc. No 16 at 8.)

9

SSR 96-8p[4] requires the ALJ to include a narrative discussion of how the evidence

supports each conclusion, citing specific medical or non-medical evidence (e.g., daily activities,

observations.)  *Id.* at *7.  The ALJ must also explain how any material inconsistencies or

ambiguities in the evidence were considered and resolved.  *Id.*  The case of *Brown v. Comm'r of*

*Soc. Sec.*, 245 F.Supp.2d 1175 (D.Kan. 2003) is instructive:

> Although the ALJ purports to base these [RFC] findings on the State Agency
> Medical Consultants' Physical Residual Functional Capacity Assessment
> ("Assessment") (see Tr. 122-129), the ALJ's findings are not consistent with
> many items reflected in the Assessment.  For example, the Assessment states that
> Plaintiff can frequently lift 25 pounds (Tr. 123), while the ALJ finds that Plaintiff
> can frequently lift only 10 pounds (Tr. 16).  In addition, the Assessment indicates
> that Plaintiff's ability to push and pull is "unlimited" (Tr. 123), while the ALJ
> finds that Plaintiff's ability to push and pull is "limited bilaterally in the upper
> extremities." (Tr. 16).  Many other inconsistencies exist between the ALJ's
> findings and the Assessment.  The ALJ, however, never explains why he makes
> findings inconsistent with the Assessment nor does he even acknowledge that he
> is rejecting portions of the Assessment.  He cites to no medical records,
> testimony, or other evidence in support of his RFC findings, other than the
> Assessment.  And, he fails to explain how any material inconsistencies or
> ambiguities in the evidence were considered and resolved. In short , the Court
> finds that the ALJ has failed to link his RFC determination with specific evidence
> in the record and has failed to comply with Social Security Ruling 96-8p.
>
> Due to these failures of the ALJ, the Court cannot adequately assess whether
> relevant evidence supports the ALJ's RFC determination.  His bare conclusions
> are simply beyond meaningful judicial review.  The Court therefore holds that the
> case must be remanded, and upon remand the Commissioner shall provide the
> proper narrative discussion describing how the evidence supports his conclusions
> at step four, as required by Social Security Ruling 96-8p, and how the
> inconsistencies or ambiguities in the evidence were considered and resolved.
> This shall include a discussion of the reasons supporting the ALJ's apparent
> rejection of certain findings of the State Agency Medical Consultants' Physical
> Residual Functional Capacity Assessment.

---

[4]     SSR 96-8p is titled: Policy Interpretation Ruling Titles II and XVI: Assessing Residual
Functional Capacity in Initial Claims.  1996 WL 374184.

*Brown*, 245 F.Supp.2d at 1186-1187.

As in *Brown*, the ALJ in the instant case never explained why he made findings inconsistent with the state agency assessments.  The ALJ did not cite to any records, testimony, or other evidence in support of his RFC findings other than the assessments.  Thus, the Court finds that the ALJ has failed to link his RFC determination with specific evidence in the record and has failed to comply with SSR 96-8p.  Since the Court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination, this case should be remanded pursuant to 42 U.S.C. § 405 in order for the ALJ to comply with SSR 96-8p.

Coleman, relying on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), also argues that the ALJ's RFC assessment does not reflect any of the moderate limitations as found by Dr. Tishler in Part I, Summary Conclusions.  (Tr. 161-162.)   (Doc. No. 13 at 9.)  The Commissioner asserts that the ALJ did not reject these limitations, but afforded them "evidentiary weight" as reflected in the RFC.  (Doc. No. 16 at 10.)  Moreover, the Commissioner contends that the "reasons-giving" procedural requirement applies only to treating sources, not reviewing sources.  *Id*.

A mental RFC assessment form contains three sections–Section I, titled "Summary Conclusions," Section II, "Remarks," and Section III, "Functional Capacity Assessment."  The Summary Conclusions section consists of a list of twenty individual mental functional abilities.  Next to each listed ability are five category boxes for the evaluator to check: not significantly limited, moderately limited, markedly limited, no evidence of limitation in this category, and not ratable on available evidence.  The directions to the Summary Conclusions section state, "[d]etailed explanation of the degree of limitation for each category (A through D), as well as

11

any other assessment information you deem appropriate, is to be recorded in Section III

(Functional Capacity Assessment)."  (Tr. 161.)  Dr. Tishler checked "not significantly limited"

for twelve of the abilities and "moderately limited" for the remaining eight.  These eight are:

> (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) the ability to work in coordination with or proximity to others without being distracted by them; (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to interact appropriately with the general public; (6) the ability to accept instructions and respond appropriately to criticism from supervisors; (7) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, (8) the ability to respond appropriately to changes in the work setting.

(Tr. 161-162.)

Coleman relies on *Ealy* to argue that the ALJ should have considered the moderate

limitation findings of the state agency physicians in calculating the RFC.  (Doc. No. 13 at 8-9.)

The *Ealy* Court, however, did not resolve the issue of whether an ALJ must include in the

hypothetical not only the Section III Functional Capacity Assessment, but also the more specific

limitations in Section I.  Nonetheless, other courts have addressed this issue and found that

Section I of the mental assessment is merely a worksheet and does not constitute the RFC

assessment.  *See Velez v. Comm'r of Soc. Sec.*, 2010 WL 1487599, *6, Case No. 1:09cv0715

(N.D. Ohio Mar. 26, 2010) ("In general, . . . the ALJ is not required to include the findings in

Section I in formulating residual functional capacity."); *Kachik v. Astrue*, 2010 WL 3852367, *6

(W.D. Pa. Sept. 27, 2010) (*citing Liggett v. Astrue*, 2009 WL 189934 at *8 (E.D. Pa. 2009);

*Berry v. Astrue*, 2009 WL 50072, *15 (W.D. Va. Jan. 7, 2009); *Norris v. Astrue*, 2008 WL

4911794, *16 (E.D. N.C. Nov. 14, 2008); *Malueg v. Astrue*, 2007 WL 5480523, **6-7 (W.D.

12

Wis. May 30, 2007).  Moreover, POMS DI 24510.060 and DI 24510.060B4[5] state that "Section III Functional Capacity Assessment, is for recording the mental RFC [residual functional capacity] determination.  It is under Section III where "the actual mental RFC assessment is recorded ..."  *See* POMS DI 24520.060(B)(2).  The ALJ, therefore, properly referred only to Section III of the state agency physician's mental RFC assessment.

Next, Coleman argues that there is no evidence that she could perform any past relevant work as an assembler, a cashier, or a parking lot attendant.  (Doc. No. 13 at 10.)  Furthermore, she contends the ALJ failed to comply with SSR 82-62[6] in determining the mental demands of these past jobs.  *Id*.

SSR 82-62 addresses the factors the ALJ must consider in determining whether a claimant is capable of performing past work, as follows:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of

---

[5]    The Program Operations Manual System ("POMS") is the operational reference used by SSA staff to conduct SSA's daily business.  "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect ..." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003).  The POMS is available at http://www.ssa.gov/regulations/index.htm.

[6]    SSR 82-62 is titled: Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General.  1982 WL 31386.

the work as generally performed in the economy.

The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work).

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. In addition, **for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.** Persons with physical impairments (e.g., cardiovascular or gastrointestinal disorders) may have performed stressful tasks. This may also require a decision as to whether the impairment is compatible with the performance of such work. If more than one job was performed during the 15-year period, separate descriptions of each job will be secured.

SSR 82-62 at **2-3 (emphasis added).

SSR 82-62 concludes:

A decision that an individual is not disabled, if based on §§ 404.1520(e) and 416.920(e) of the regulations, must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process.

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific

14

findings of fact:

> 1.  A finding of fact as to the individual's RFC.
>
> 2.  A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3.  A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62 at *4.

Given the VE testimony, the ALJ concluded that Coleman could do her past work as an assembler, as performed by her, but not as customarily performed.  (Tr. 26, 359.)   Also based on the VE's opinion, the ALJ concluded that Coleman could perform her past jobs as a cashier and parking lot attendant.  *Id*.  The ALJ supported his step four finding as follows:

> This position meets the criteria for past relevant work since it was performed within 15 years of the date of adjudication; it lasted long enough for the claimant to learn her duties, and it was done at substantial gainful activity levels.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The vocational expert classified each of these positions as unskilled work.  Under SSR 85-15, a substantial loss of ability to meet any one of the mental activities generally required by competitive, remunerative, unskilled work, justifies a finding of disability.  The basic mental demands of unskilled work are defined as: understanding, remembering, and carrying out simple instructions; responding appropriately to supervision, co-workers, and usual work situations; and dealing with routine change in a routine work setting.  (Id.)  The claimant retains the ability to meet these basic demands of unskilled work with no exertional, postural, or environmental limitations.  Accordingly, she is able to perform her past relevant work as an assembler, cashier, and parking lot attendant.

(Tr. 27.)

Although the ALJ attempted to comply with SSR 82-62, he made no findings specifying the pertinent mental demands of these occupations.  Even though the ALJ questioned Coleman

15

about how she performed her jobs, he did not obtain information about specific duties which are likely to produce tension and anxiety, such as speed and working with other people when determining if Coleman's mental impairment is compatible with her work. The ALJ addressed SSR 85-15,[7] noting that Coleman retains the ability to perform unskilled work.[8] However, that regulation specifies that a claimant with mental illness "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." *Id*. at *6. It further states, that "[a] claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." *Id*. SSR 85-15 instructs ALJs that "[a]ny impairment-related limitations created by an individual's response to demands of work [ ] must be reflected in the RFC assessment." *Id.* As it appears the ALJ did not comply with social security regulations, upon remand, the ALJ should also consider these issues.

**Borderline Intellectual Functioning**

Coleman next contends that the ALJ erred in failing to address intelligence tests showing she had borderline intellectual functioning. (Doc. No. 13 at 11-12.) The Commissioner argues that even though the record reflects Coleman had a full scale IQ score of 69 when she was between the ages of eight and fifteen, she has not established how that score restricts her ability to work. (Doc. No. 16 at 10-11.) Furthermore, the Commissioner contends that the record is replete with documentation that Coleman has average intelligence. (Doc. No. 16 at 11.)

---

[7]       SSR 85-15 is titled: Titles II and XVI: Capability to do Other Work – The Medical-
        Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments.
        1985 WL 56857.

[8]       20 C.F.R. § 404.1568 defines unskilled work as "work which needs little or no
        judgment to do simple duties that can be learned on the job in a short period of time."

The ALJ acknowledged Coleman's history of special education, but, nonetheless, concluded that she "exhibits generally adequate mental functioning . . ." (Doc. No. 26.)  As the Commissioner points out, the record is replete with documentation from various sources that Coleman has average intelligence.  In 2005, a social worker noted that Coleman exhibited average intellectual functioning.  (Tr. 174.)  Dr. Kostrzewski documented average intelligence.  (Tr. 173.)  Dr. Tishler also felt Coleman had average intelligence.  (Tr. 163, 301.)  Furthermore, 2007 hospital notes indicated that Coleman's intellectual functioning was within normal limits.  (Tr. 218.)  The Court also notes that when Coleman was interviewed by an employee at Unison Behavioral Health, Coleman indicated that she graduated from high school and had been in "regular education."  (Tr. 174.)  Finally, Coleman relayed to Dr. Kostrzewski that after high school, she attended college for one year and received a certificate as a nurse's aide.  (Tr. 172.)  The record supports the ALJ in not finding additional limitations due to Coleman's intellectual functioning.

### Obesity

Lastly, it is argued that the ALJ failed to recognize that, based on Coleman's body mass index ("BMI"), she was obese, or to consider how that condition impacted her ability to work as set forth in S.S.R. 02-1p.  (Doc. No. 13 at 12-13.)  The Commissioner cites S.S.R. 02-1p for the proposition that obesity, in combination with other impairments, "may" increase the severity of other limitations, but the regulation "does not mandate a particular mode of analysis."  (Doc. No. 16 at 12.)  Moreover, the Commissioner argues that Coleman did not list obesity in her application, nor has any doctor of record diagnosed her with obesity or assigned her obesity-related limitations.  *Id.*

17

SSR 02-1p instructs how to identify obesity as a medically determinable impairment:

When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner. However, if there is evidence that indicates that the diagnosis is questionable and the evidence is inadequate to determine whether or not the individual is disabled, we will contact the source for clarification, using the guidelines in 20 CFR 404.1512(e) and 416.912(e).

When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

When deciding whether an individual has obesity, we will also consider the individual's weight over time.[FN3] We will not count minor, short-term weight loss. We will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity. (See question 13 for a discussion of weight loss and medical improvement.)

Finally, there are a number of methods for measuring body fat and, if such information is in a case record, we will consider it. However, we will not purchase such testing. In most cases, the medical and other evidence in the case record will establish whether the individual has obesity.

TITLES II AND XVI: EVALUATION OF OBESITY, SSR 02-1p, 2000 WL 628049, **3 -4 [footnote 3 omitted].

Coleman provided no evidence that her obesity affected her ability to work.  More importantly, her claim appears to stem from a nurse's single notation, indicating that Coleman was five feet, seven inches tall and weighed 210 pounds.  (Tr. 238.)  The nurse noted that Coleman was overweight for her height and the nurse reviewed with Coleman the risks of obesity and the benefits of healthy eating.  *Id.*  Pursuant to SSR 02-1p, the ALJ can use his

18

"judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity."  All things considered, this Court cannot conclude the ALJ failed to properly evaluate the alleged obesity.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner should be vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White                                    
United States Magistrate Judge

Date:    November 18, 2010    


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**